UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

IN RE:

STEPHEN THOMAS HORTON                              CASE NO. 10-53495

DEBTOR

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court by the Debtor's Amended Schedules B and C (Doc. 31), the Trustee's Objection to the Debtor's Claim of Exemptions (Doc. 32), Citizen Commerce National Bank's Objection to Debtor's Claim of Exemptions (Doc. 34), the Debtor's Amendment to Schedule C (Doc. 37), and Citizen Commerce National Bank's Objection to Debtor's Amended Claim of Exemptions (Doc. 55).

In his amended Schedule C, the Debtor claims an exemption in certain commissions earned pursuant to his sale of crop insurance as an employee of CGB Diversified Services, Inc. ("Diversified"). As a basis for the exemption, the Debtor relies upon 15 U.S.C. § 1673, which places a restriction on wage garnishments. The Chapter 7 Trustee and Citizens Commerce National Bank ("CCNB") filed objections to the Debtor's claim of exemption. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

I.

The Debtor was formerly a principal of AG Insurance, Inc. ("AG"), a Kentucky corporation that sold insurance products. In 2007, the Debtor and Diversified reached an agreement for the sale of a book of crop insurance business previously owned by AG and acquired by the Debtor as a dividend from the stock of AG. The purchase agreement was entered on December 31, 2007 between AG, the Debtor, and Diversified.

The contract provided for two sources of payments to the Debtor from Diversified. First, under the purchase agreement, Diversified was to make payments to the Debtor for his "executive goodwill" in the total amount of $2,500,000.00 (the "Goodwill Payments"). Second, the Debtor also entered into an employment agreement with Diversified. Under the employment agreement he was to be paid a base salary of $25,000.00 per year, plus commissions (the "Commissions").

On April 21, 2010, South Central Bank of Daviess County, Inc. filed a complaint against the Debtor and AG seeking recovery for their default under various loan documents. South Central alleged that the Debtor pledged a security interest or assigned his rights to receive the Goodwill Payments from Diversified. South Central named Diversified as an additional defendant.

Because crop insurance premiums are not paid by the insured until the crops are harvested, estimates of both the Goodwill Payment and the Commissions were paid by Diversified in the spring upon receipt of acreage estimates, and both are subject to a "true up" in the fall as premiums are actually collected. After South Central's complaint was filed, Diversified estimated the Debtor's Goodwill Payment for 2010.

According to Diversified's records, the Debtor was entitled to $481,231.00 for the third Goodwill Payment due for 2009, and was advanced $659,766.00. Diversified claimed this resulted in an overpayment of $178,535.00. The Goodwill Payment for 2010 was calculated as $409,100, but was subject to further revision and adjustment on October 31, 2010. Furthermore, according to Diversified's records, the Debtor was entitled to 2009 Commission payments of $159,657.00, and was advanced $137,750.00. Diversified claimed this resulted in an overpayment for Commissions of $21,907.00.

Diversified filed a motion in the state court action for an order allowing it to deposit funds with the court clerk which represented the amounts paid for the Goodwill Payments and the Commissions. At a hearing on Diversified's motion, it was explained that the sums Diversified estimated were due under the purchase and employment agreements could not be finally determined until October, 2010, when the crop insurance sales reports would be "trued-up" with actual premiums collected. Following the hearing, the state court entered an order directing the payment

of the estimated funds owing to the court clerk. However, the state court would not dismiss Diversified as a party to the action until the figures were "trued-up" in October.

Diversified "trued-up" the figures in October and found that the amounts due to the Debtor were actually lower than what Diversified paid to the court clerk. Specifically, Diversified claimed it overpaid $11,942 in goodwill payments and $6,550.00 in commissions, for a total of $18,497.00. On November 1, 2010, Diversified filed a motion to withdraw $18,497.00 from the state court's registry. A hearing was set for November 3, 2010. However, the Debtor filed his bankruptcy petition on November 1, 2010 and Diversified's motion was stayed.

Diversified filed a motion requesting that the bankruptcy court lift the automatic stay so it could obtain an order from the state court permitting it to withdraw the $18,497.00 overpayment (Doc. 14). The Debtor filed an objection to Diversified's motion (Doc. 17). Among other things, the Debtor claimed that Diversified's alleged security interest impaired the Debtor's exemptions on income/compensation as asserted in his Schedule C, which originally claimed the Goodwill Payments and Commissions were exempt as compensation for loss of future income under section 522(d)(11)(E).

CCNB, a secured creditor in the Debtor's case, filed a motion for stay relief (Doc. 20), and an objection to the Debtor's claim of exemption in the funds from Diversified (Doc. 19). CCNB claimed the exemption was inappropriate because the funds were not "a payment in compensation of loss of future earnings of the debtor" nor were they "reasonably necessary for the support of the Debtor" and were consequently ineligible for the claimed exemption under section 522(d)(11)(E). The Debtor's response (Doc. 34) argued that the commissions had not been earned until after the petition date, thus making them future wages under section 522(d). The Trustee also filed an objection to the Debtor's claimed exemption (Doc. 32). Like CCNB, the Trustee argues that no portion of the sums exempted represent payment in compensation of loss of future earnings.

Following the objections, the Debtor filed amended schedules on December 17, 2010 to change the claimed exemptions (Doc. 37). In the amended schedules, the Debtor now claims an exemption in the Commissions based upon 15 U.S.C. § 1673, and an exemption in future commissions, if any, under 522(d)(11)(E). The Debtor has also withdrawn the previously claimed

exemption in the Goodwill Payments.

CCNB then filed an objection to the Debtor's amended claim of exemption (Doc. 55). CCNB argues that the Debtor's claimed exemption cannot be based upon 15 U.S.C. § 1673, because that statute is a limitation on creditor garnishments outside of bankruptcy and is inapplicable to bankruptcy proceedings. CCNB further objects to the Debtor's claim of an exemption based on section 522(e)(11)(E) because nothing in the transaction with Diversified entitles the Debtor to a payment in loss of future earnings. Lastly, CCNB objects to any claim of exemption to the extent that the Debtor asserts that any portion of the 2009 or 2010 commissions are post-petition earnings because they were earned before the Debtor's filing.

A hearing was held on December 16, 2010 to address the Debtor's claimed exemptions, the related objections, and the motions for stay relief. The Court granted CCNB's motion for stay relief, and continued the remaining motions and objections to allow time for the parties to determine whether the Commissions were earned pre- or post-petition. At the subsequent hearing on January 20, 2011, the parties represented to the Court that they had reached an agreement to address the exemption objections and Diversified's motion for stay relief. The agreement, however, fell through and another hearing was held February 17, 2011. At this hearing, the Court granted Diversified's motion for relief from the automatic stay, and continued the exemption issue until the next regular court date. The Court also told the parties that an order would be entered directing them to file position papers within 14 days on the exemption issue and also addressing whether an evidentiary hearing would be necessary. This order (Doc. 93) also provided that if the parties did not give a reason for an evidentiary hearing, the court would take the matter under submission without any further hearings. Only CCNB filed a position paper (Doc. 97), which stated a hearing was not necessary. Accordingly, the Court has taken this matter under submission.

II.

The Debtor's amended Schedule C claims the 2009 and 2010 Commissions are exempt under 15 U.S.C. § 1673. Section 1673, which is not part of the Bankruptcy Code, is a federal wage garnishment restriction. It provides:

**SEC. 1673: RESTRICTION ON GARNISHMENT**

> **(a) Maximum allowable garnishment**.
>
> Except as provided in subsection (b) of this section and in section 1675 of this title, the maximum part of the aggregate disposable earnings of an individual for any work week which is subjected to garnishment may not exceed
>
> (1)  25 per cent of disposable earnings for that week, or
>
> (2)  the amount by which disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206(a)(1) of title 29 in effect at the time the earnings are payable, whichever is less.
>
> In the case of earnings for any pay period other than a week, the Secretary of Labor shall by regulation prescribe a multiple of the Federal minimum hourly wage equivalent in effect to that set forth in paragraph (2).
>
> . . .
>
> **(c) Execution or enforcement of garnishment order or process prohibited.**
>
> No court of the United States or any State, and no State (or officer or agency thereof), may make, execute, or enforce any order or process in violation of this section.

15 U.S.C. § 1673.

Based upon this statute, the Debtor claims the maximum amount allowed to be garnished from his wages is 25% of disposable income. Therefore, any security agreement or garnishment against wages, including the Debtor's Commissions in excess of 25% is void and unenforceable as a matter of law (Doc. 37). CCNB argues that this statute does not create an additional bankruptcy exemption, and courts have repeatedly held that it does not apply in the bankruptcy context. CCNB asserts that a bankruptcy proceeding, which requires the Commissions to be turned over to the estate, is not a "garnishment." The Court finds that the Commissions are not exempt under section 1673.

Courts that have faced the issue of whether 15 U.S.C. § 1673 is a source of exemption in earned but unpaid wages have held that it is not. *See In re Bloomstein*, No. 09-11241-JNF, 2010 WL 4607525, at *3 (Bankr. D. Mass. Nov. 5, 2010) ("There is no indication [in the CCPA] that Congress intended to drastically alter the delicate balance of a debtor's protections and obligations during the bankruptcy procedure."); *Smith v. Frazier*, 421 B.R. 513, 517 (S.D. Ill. 2009) ("Stated simply, once

the [debtors] sought bankruptcy protection, the Bankruptcy Code and applicable state and federal property exemption statutes governed their rights and remedies–not the limitation on garnishment of wages contained in 15 U.S.C. § 1673.").

The Supreme Court has held that the CCPA, of which section 1673 is a part, was enacted by Congress to prevent bankruptcy by eliminating overly burdensome garnishments by creditors. *Kokoszka v. Bedford*, 417 U.S. 642, 650 (1974). It was not intended to alter the purposes of the Bankruptcy Act. *Id.* Therefore, the Debtor may not rely upon 15 U.S.C. § 1673 as a source of exemption for his Commissions.

Furthermore, the Commissions are not exempt under section 522(d)(11)(E) because the Commissions were earned pre-petition. Section 522(d)(11)(E) exempts property that is "a payment in compensation of loss of future earnings of the debtor . . . ." 11 U.S.C. § 522(d)(11)(E). This section refers to lost earnings for post-petition periods, and not for periods prior to the filing of the bankruptcy petition. *In re Jackson*, 593 F.3d 171, 177 (2d Cir. 2010). Therefore, to determine whether the Commissions relate to the pre- or post-petition period, the Court must determine when the Commissions were earned. The Debtor maintains they were earned post-petition, while CCNB argues they were earned pre-petition. If the Commissions were earned pre-petition, they cannot be found exempt under section 522(d)(11)(E).

Of note is the 6th Circuit BAP case of *Wicheff v. Baumgart (In re Wicheff)*, 215 B.R. 839 (B.A.P. 6th Cir. 1998). In *Wicheff*, the BAP addressed the issue of when commissions from insurance renewals are earned. The BAP held that, "[i]nsurance renewal commissions received postpetition are property of the estate *if all of the actions required to earn the commissions were completed prepetition.*" *Id.* at 841 (emphasis added). Other courts have held the same. *See Tully v. Taxel (In re Tully)*, 202 B.R. 481 (B.A.P. 9th Cir. 1996) (real estate commissions received postpetition by debtor were property of the estate where "all of the acts of the debtor necessary to earn [them] are rooted in the pre-bankruptcy past."); *Towers v. Wu (In re Wu)*, 173 B.R. 411 (B.A.P. 9th Cir. 1994) (postpetition insurance and annuity renewal commissions for policies sold prepetition are property of the estate to the extent that the commissions were attributable to prepetition services); *In re Bluman*, 125 B.R. 359 (Bankr. E.D.N.Y. 1991) (insurance renewal commissions

received by debtor postpetition were property of the estate where the debtor had fulfilled all obligations necessary to earn the commissions prepetition).

The Debtor did nothing to earn the Commissions post-petition. Even though crop insurance premiums are not paid by the insured until the crops are harvested, the Debtor had done all that was required to earn the Commissions before the premiums were paid. All that remained was for Diversified to "true up" in the fall as the premiums were collected, and then either pay the Debtor more if the advance was too low, or require him to pay money back if the advance was too high. Nothing remained for the Debtor to perform. Indeed, the Debtor could not have done more post-petition, as Diversified terminated his employment shortly after he filed his petition. Therefore, the Commissions may not be exempted under section 522(d)(11)(E).

### III.

Having determined that the Commissions are not exempt under 15 U.S.C. § 1673 or 11 U.S.C. § 522(d)(11)(E), CCNB's objection to the Debtor's claimed exemptions is hereby GRANTED. The Commissions are therefore property of the Debtor's bankruptcy estate.

Copies to:

Matthew B. Bunch, Esq.
Debtor
Mark T. Miller
Stephen Barnes, Esq.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Joseph M. Scott, Jr.*
**Bankruptcy Judge**
**Dated: Friday, March 04, 2011**
**(jms)**